### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SAUL HYMES, ILANA HARWAYNE-GIDANSKY, EDGAR FIERRO, and JOAN LEWIS individually and on behalf of all others similarly situated,

                          Plaintiffs,

    v.

EARL ENTERPRISES HOLDINGS, INC.

                          Defendant.

**Case No.  6:19-cv-644-Orl-41GJK**

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Saul Hymes, Ilana Harwayne-Gidansky, Edgar Fierro, and Joan Lewis ("Plaintiffs") now respectfully move on an unopposed basis for preliminary approval of a proposed class action settlement with Defendant Earl Enterprises, Inc. ("Defendant" or "Earl"), the terms of which are set forth in the "Settlement Agreement and Release" ("Settlement Agreement" or "SA") attached hereto as **Exhibit 1**.[1]

## I.    INTRODUCTION

This Action was initiated following Earl's announcement that it was the subject of third-party cyberattacks involving malware installed on Earl's point-of-sale ("POS") systems for approximately ten (10) months, resulting in the exfiltration of 2.15 million of its customers' personally identifiable information ("PII") (the "Data Breach"). Plaintiffs allege, *inter alia*, that Earl was negligent, breached its contracts with its customers, was unjustly enriched, breached

---

[1]  Unless otherwise defined herein, all capitalized terms have the same force, meaning, and effect as ascribed in the Definitions embodied in Article II of the Settlement Agreement (SA ¶¶ 2.01-2.35).

customers' confidence, and violated state consumer protection laws when it failed to protect Plaintiffs' PII from being compromised in the Data Breach at issue. As a result of swift litigation and mediation, the Parties reached a hard-fought and arms-length resolution.

The Settlement is fair, reasonable, and adequate, and is in the best interests of the nationwide Settlement Class Members ("Class Members"). The Settlement squarely addresses the issues raised in the Action and affords Class Members significant monetary and nonmonetary relief: tiered monetary relief to compensate Settlement Class Members for inconveniences and losses, and injunctive relief designed to better protect Earl Enterprises restaurants against similar data breaches that may again compromise consumers' PII. The Settlement compares favorably with settlements in similar litigation and was reached only after intensive, arms-length negotiations before a neutral and experienced mediator and subsequent, multiple negotiation sessions following that mediation. If approved, the Settlement will resolve all claims arising out of the Data Breach Incident and will provide Settlement Class Members with the precise relief this Litigation was filed to obtain. In light of the current pandemic that has upended the lives and finances of millions, immediate relief is now more valuable than ever.

Accordingly, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an order: (1) provisionally certifying the proposed Settlement Class; (2) preliminarily approving the Settlement; (3) approving the proposed Notice Program and the form and content of the Claim Form and Notices attached to the Settlement Agreement as Exhibits 1-B, 1-C, and 1-D;[2] (4) appointing Postlethwaite & Netterville to serve as Settlement Administrator; (5) approving the proposed opt-out and objection procedures; (6) appointing Plaintiffs as Representative Plaintiffs; (7) appointing

---

[2] Unless otherwise stated, the Exhibits are to the Settlement Agreement.

John A. Yanchunis and Ryan J. McGee of Morgan & Morgan Complex Litigation Group, Matthew M. Guiney and Carl Malmstrom of Wolf Haldenstein Adler Freeman & Herz, LLP, Rosemary M. Rivas of Levi & Korsinsky, LLP, and Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, as Settlement Class Counsel; and (8) scheduling a Final Approval Hearing at a time and date convenient for the Court, and in conformity with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").[3]

## II.    SUMMARY OF THE LITIGATION

On March 29, 2019, Defendant announced that it had "become aware of a data security incident potentially affecting payment card information of a limited number of guests that dined at certain of Earl Enterprises' restaurants." Defendant included a list of approximately 100 affected restaurants (largely its chain Buca di Beppo, but also other restaurants including Planet Hollywood and Earl of Sandwich) and stated that the breach involved transactions at restaurants between May 23, 2018, through March 18, 2019.[4] The Data Breach Incident involved an estimated 2.15 million cards that were located and for sale on the dark web through a site called "Joker's Stash" beginning as early as February 20, 2019, according to blogger Brian Krebs.

Plaintiffs allege that Defendant failed to ensure that access to the affected data systems was reasonably safeguarded, failed to acknowledge and act upon industry warnings, failed to use proper security systems and protocols to detect and deter the type of attack that occurred, and failed to provide timely and adequate notice to Plaintiffs and other proposed Class Members that their PII had been stolen, putting Plaintiffs and the proposed Class Members at a substantially increased risk of identity theft. Defendant disputes those allegations.

---

[3] A proposed Preliminary Approval Order entering the relief requested herein is attached to the Settlement Agreement as Exhibit 1-A.
[4]    *Id.*

Following briefing a motion to dismiss and Plaintiffs' responses thereto, the Parties agreed to and did retain Rodney Max, *Esq*., a highly experienced mediator, to assist the Parties in settlement negotiations. Declaration of John A. Yanchunis, filed concurrently herewith ("Yanch. Decl."), ¶¶ 15, 16, attached hereto as **Exhibit 2**. Prior to the mediation, the Parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation. *Id*. The Parties also submitted a draft settlement term sheet prepared by Plaintiffs, which was then used as the foundation for the ensuing negotiations. *Id*.

On February 19, 2020, the Parties, through their respective counsel, engaged in a full-day mediation session before Mr. Max. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Yanch. Dec., ¶ 16. With the assistance of Mr. Max, the Parties were able to reach an initial resolution to the Litigation on a class-wide basis that provides both injunctive and monetary relief to Settlement Class Members. (Doc. 57); Yanch. Dec., ¶¶ 15–17. On February 20, 2020, the Court was advised that the Parties had reached a term sheet outlining the substance of settlement. (Doc. 57). During the ensuing months, the Parties continued the exchange of information and negotiations as to the final details of the Settlement Agreement. (Docs. 60, 62, 64, 66). Based on Plaintiffs' counsel's independent investigation of the relevant facts and applicable law, experience with other data breach cases, the information provided by Defendant, and the strengths and weaknesses of the Parties' respective positions (including the defenses articulated in Defendant's Motion to Dismiss and Reply to Plaintiffs' Opposition thereto), Plaintiffs' counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Yanchunis Decl., ¶¶ 18–34.

The Parties jointly selected Postlethwaite & Netterville to serve as the Settlement Administrator. The Parties worked together to refine the details of the proposed Notice Program

4

and each document comprising the Class Notice, which are embodied in the Settlement Agreement and the Exhibits attached thereto. Yanch. Dec., ¶ 34.

## III.    THE PROPOSED SETTLEMENT TERMS

The material terms of the proposed Settlement are summarized as follows:

### A.    The Settlement Class

Pursuant to the Settlement Agreement, Plaintiffs request that the Court provisionally certify the following Settlement Class:

> All residents of the United States whose Personal Information was exposed or potentially exposed as a result of the Data Breach Incident.

SA ¶ 2.21.[5]

### B.    Compensation to Settlement Class Members

#### 1.    Cash Payment for Reimbursement of Out-of-Pocket Expenses

All Class Members who submit a valid and timely Claim Form and supporting documentation are eligible to receive up to $5,000 per Settlement Class Member for reimbursement for documented out-of-pocket expenses incurred as a result of the Data Breach.[6] To receive payment for out-of-pocket expenses, the Settlement Class Member must complete the

---

[5] Excluded from the Settlement Class are Defendant and any of its affiliates, parents or subsidiaries; all Settlement Class Members who timely and validly request exclusion from the Settlement Class; the Judge and Magistrate Judge to whom the Litigation is assigned and any member of those Judges' staffs or immediate family members; and any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity or occurrence of the Data Breach Incident or who pleads *nolo contendere* to any such charge. SA, ¶ 2.21.

[6] Class Members may claim reimbursement for one or more of the following: (i) costs and expenses spent addressing identity theft or fraud; (ii) losses caused by restricted access to funds (*i.e.*, costs of taking out a loan, ATM withdrawal fees); (iii) preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review; (iv) late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees; (v) unauthorized charges on credit or debit card that the Settlement Class Member sought to have the card issuer reverse but that were not reimbursed; (vi) other documented losses incurred as a result of the Data Breach Incident and that were not reimbursed; and (vii) up to four hours of documented time spent for personal investigation and remediation relating to the Data Breach (calculated at the rate of $20.00 per hour). SA ¶ 3.03.

appropriate section of the Claim Form and provide documentation supporting a claim for out-of-pocket expenses, which could include but is not limited to, a receipt from an affected restaurant reflecting payment by a payment card during the Data Breach Incident's Relevant Period; a payment card statement reflecting a charge at an affected restaurant during the Data Breach Incident's Relevant Period; or, notification from a bank or financial institution that a payment card was compromised as a result of the Data Breach Incident. SA ¶ 3.02(b).

To be considered valid, all Claim Forms and related documentation must be postmarked (or submitted electronically in accordance with the requirements for electronic submission of a Claim Form) on or before the Claims Deadline, which the Parties propose shall be the 120th day after the Preliminary Approval Date. SA ¶ 3.04(b).

### C.  Earl Enterprises Restaurant Promotional Cards

For those Settlement Class Members who do not have or cannot demonstrate out-of-pocket expenses, those Settlement Class Members who submit a valid and timely Claim Form and attest that they used a payment card at an affected Earl Enterprises restaurant during the Data Breach Incident's Relevant Period are eligible to receive two $10.00 promotional cards for dining at either Planet Hollywood or Buca di Beppo. SA ¶ 3.02.

### D.    Remedial Measures Attributable to the Settlement

An additional benefit of the Settlement is the remedial measures that Earl agrees to adopt, continue, or maintain as a result of this Litigation, SA ¶¶ 4.01–03, which will benefit all Settlement Class Members regardless of whether or not they submit a Claim, as well as consumers in general who may dine at Earl Enterprises restaurants in the future. These remedial measures include, but are not limited to: 1) implement an EMV/P2PE credit card solution for card-present transactions; 2) implement an intrusion prevention system and an intrusion detection system; 3) develop an

6

attendance required security awareness training program to educate employees about computer security, corporate policies and procedures, and the most prevalent security threats; 4) implement file integrity monitoring (FIM) to test operating systems, databases, and application files for tampering; and 5) promptly comply with Payment Card Industry Data Security Standards (PCI-DSS). SA ¶ 4.01(a)–(e).

### E.    Notice Program and Settlement Administration

Notice and administration will be paid from the common fund. SA ¶ 3.06. Plaintiffs' counsel will work with Earl and the Settlement Administrator in good faith to minimize these costs consistent with the requirements of Due Process.

As set forth in greater detail in the Settlement Agreement, notice to the Settlement Class will be provided *via* the following methods: (i) a national print publication; (ii) a dedicated Settlement Website established and maintained by the Settlement Administrator which amongst other details will provide relevant dates and deadlines pertaining to the Settlement and make important case documents available for review and download; (iii) Google & Yahoo Network of Sites to target adults 18 years old and over in the United States who visit restaurants and pay with a credit or debit card; (v) social media targeted ads on Facebook, Instagram, and Youtube; and (vi) Spotify audio and banner advertisements. SA ¶ 7.02(a); *See* Declaration of Brandon Schwartz, attached hereto as **Exhibit 3** ("Schwartz Decl."). The Settlement Website will also provide Class Members with the ability to submit an online request to opt out of the Settlement. SA ¶ 7.02. Finally, the Settlement Administrator will establish a toll-free help line to address Class Members' inquiries. SA ¶ 7.02(b).

### F.    Attorneys' Fees and Expenses and Service Awards

Plaintiffs will request a total for both attorneys' fees, costs, and expenses of $195,000.00. Earl Enterprises agrees Plaintiffs may seek this amount from the common fund to pay the fees and expenses of legal counsel for Plaintiffs in an aggregate amount not to exceed $195,000.00, subject to Court approval. SA ¶ 11.02. Plaintiffs will also request a service award for each of the four named Plaintiffs. Earl agrees to the payment from the common fund of a service award not to exceed $2,500.00 for each of the four named Plaintiffs, subject to approval by the Court. SA ¶ 11.03. Attorneys' fees, costs, expenses, and the service awards were negotiated only after all substantive terms of the Settlement were agreed upon by the Parties. SA ¶ 11.01; Yanch. Dec., ¶ 20.

### IV.    ARGUMENT

### A.    Certification of the Settlement Class is Appropriate

Prior to preliminarily approving a proposed settlement, the Court must first determine whether the proposed Settlement Class is appropriate for certification. *See* Manual for Complex Litig., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed settlement satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. Rule 23(a)(1–4); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where, as here, certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. *Amchem*, 521 U.S. at 615–16. In the context of settlement, district courts are vested with broad discretion in determining whether certification of a class action is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996); *Burrows v.*

*Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) ("A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'") (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)); *see also, Amchem*, 521 U.S. at 620 ("[F]or settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")

This case meets all of the requirements of Rule 23(a) and (b)(3).

### 1.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### a.    Numerosity

Numerosity requires that a "class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that the plaintiff provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 2,150,000 payment cards affected by the Data Breach and likely as many people in the putative class. Thus, the numerosity requirement is easily satisfied.

#### b.    Commonality

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that at least one common contention is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation

omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013); *Dukes*, 131 S. Ct. at 2556 ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."). Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. Settlement Class Members are joined by common questions of law and fact that arise from the same event—the Data Breach Incident. The critical issues posed by this litigation are: (1) whether the PII of Settlement Class Members was obtained by a third party without authorization due to compromised POS systems at Earl Enterprises' affected restaurants; (2) whether Defendant had a duty to protect the PII of Settlement Class Members from disclosure; and (3) whether Settlement Class Members were injured by Defendant's failure to protect their PII. The central question behind every claim in this Litigation is whether Defendant adequately secured its consumers' PII. The answer to that question depends on common evidence that does not vary from class member to class member, and can be fairly resolved on a class-wide basis—whether through litigation or settlement—for all Settlement Class Members at once. These common issues converge at the center of Defendant's conduct in this Litigation, satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) (commonality satisfied where all "class members had their private information stored in Countrywide's databases at the time of the data breach."); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D.

Tex. 2012) (commonality satisfied where answering "the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### c.    Typicality

Typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). When the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' claims arise from the same event (the Data Breach Incident), that gives rise to the claims of the other Settlement Class Members and are based on the same legal theory, *i.e*., that Defendant had a legal duty to protect Plaintiffs' and Settlement Class Members' PII. Because there is a "sufficient nexus" between the Plaintiffs' claims and the claims of Settlement Class Members, typicality is satisfied. *Hines*, 334 F.3d at 1256.

### d.    Adequacy

Rule 23(a)(4) is two-fold. It requires that: (1) the class representative "not possess interests which are antagonistic to the interests of the class," and (2) "the representative's counsel must be qualified, experienced, and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

Both components are satisfied because Plaintiffs' interests in this Litigation are aligned with, and not antagonistic to, those of the Settlement Class, and because Plaintiffs are represented by qualified and competent counsel. Plaintiffs provided their PII to Defendant and allege that their PII was compromised as a result of the Data Breach Incident, just as the PII of the Settlement Class Members was also allegedly compromised. Indeed, Plaintiffs' claims are identical to the claims of Settlement Class Members, and Plaintiffs and the Settlement Class Members desire the same outcome in this Litigation. Plaintiffs have vigorously prosecuted this case thus far for the benefit of all Settlement Class Members. Yanchunis Decl. ¶¶ 15–23. Plaintiffs have participated in the Litigation, reviewed pleadings, participated in informal discovery, and provided input in crafting and approving the Settlement. *Id.*

In addition, proposed Settlement Class Counsel are experienced in nationwide class action litigation; with respect to data breach class actions, the undersigned are well recognized practice leaders. Yanchunis Decl., ¶¶ 12. Moreover, because Plaintiffs and their counsel have devoted considerable time and resources to this Litigation and have shown a deft understanding of the issues in this Litigation, the adequacy requirement is satisfied. *Id.* ¶¶ 12–23.

## 2. The Predominance and Superiority Requirements of Rule 23(b)(3) Are Met

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Settlement Class readily meets these Rule 23(b)(3) requirements.

### a.  Predominance

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *see Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Telecomms., Inc*., 275 F.R.D. at 644 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."). Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, 123–124 (3d ed. 2005)).

Common issues predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiffs' PII, like that of every other Settlement Class Member—can be established through generalized evidence. *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-

wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Several case-dispositive questions can be resolved identically for Settlement Class Members, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and Settlement Class Members and whether Defendant breached that duty.

Numerous courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-1998, 2009 WL 5184352, at *6-7 (W.D. Ky. Dec. 22, 2009) (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct"). Accordingly, the common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues.

**b. Superiority**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350,

1359 (11th Cir. 2002)). Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes the adjudication of claims in a manner that is consistent, efficient, fair, and in conformity with Due Process. *See* Fed. R. Civ. P. 23(b)(3). Absent class treatment in the instant case, each Settlement Class Member will be required to present the same or substantially similar legal and factual arguments, in separate, duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. There is also the possibility that individual claims would lead to inconsistent results.

Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered relative to the high costs of prosecuting each individual action to final judgment. *See In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

Accordingly, the requirements for certification under Rule 23(a) and (b) are satisfied.

## B. The Proposed Settlement is Fair, Reasonable, and Adequate and Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 Newberg

on Class Actions, §11.25, at 38–39 (4th ed. 2002) (hereinafter "Newberg on Class Actions"). In the first step, the Court determines whether the proposed settlement should be preliminarily approved. *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633-35. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).

### 1.    Legal Standard for Approval of a Settlement

Recent revisions to Rule 23(e)[7]—effective on December 1, 2018—standardized the analysis needed at the preliminary approval stage.[8] The Advisory Committee noted, however, that "[t]he goal of this amendment is not to displace any factor" previously considered in any given Circuit. *See also*, 4 Newberg on Class Actions § 13:58 (5th ed.) ("[V]arious pre-existing legal factors not captured by amended Rule 23(e)(2)'s list of factors may prove relevant in particular cases.").

---

[7]  Amended Rule 23(e)(1) provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). As explained above, the proposed Settlement Class here meets the criteria for certification of Rule 23(a), including all aspects of numerosity, commonality, typicality, adequacy, and predominance. *Supra* § IV.A. Rule 23(e)(1)(B)(ii) is therefore met.

[8]  Historically, to grant preliminary approval, a court needed to find only that: (1) the parties' negotiations occurred at arm's length between attorneys experienced in similar litigation; (2) there was sufficient discovery; and (3) the settlement falls within the range of reason. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662-3 (S.D. Fla. 2011). Upon such findings, a settlement agreement was entitled to a presumption of fairness and would be granted preliminary approval. *Id.* A fourth factor, the number of objections to the settlement, is not properly evaluated until the final approval stage. *Smith*, 2007 WL 4191749, at *1, n.3.

Approval is proper under the amended Rule 23(e)(1)(B)(i) upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

### 2. The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### a. Adequacy of Representation

As explained above, Plaintiffs have retained attorneys with extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation and who have zealously represented the Class at all time. *Supra* § IV.4.A.1.d. In addition, there is no conflict or any antagonism between Plaintiffs and the Settlement Class; to the contrary, Plaintiffs have vigorously prosecuted this case for the benefit of all Settlement Class Members. *Supra* § IV.A.1.d.

#### b. Arm's-Length Negotiations

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Litigation, under the supervision of a neutral and experienced mediator. Yanch. Dec., ¶¶ 15–17. These circumstances weigh in favor of approval. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318–19; Manual

for Complex Litig. at §30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Additionally, the Parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for approval. Yanch. Dec., ¶ 16. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. Yanch. Dec., ¶ 16.

### c.    The Relief Provided for The Class Is Adequate

The relief offered by the Settlement (both monetary and injunctive) is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Yanchunis Decl., ¶¶ 23, 26, 28. Plaintiffs' claims would still need to survive likely motions practice (*e.g.*, a motion to dismiss and motion for summary judgment), succeed at class certification and appeal.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement: "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin*, 391 F.3d at 535; *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998). This is not only a complex case, but it is in an especially risky field of litigation: data breaches. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk.

While Plaintiffs believe they would prevail on their claims, there is little directly analogous precedent to rely upon. Beyond the merits, class certification is challenging in any case. Class certification has been denied in other consumer data breach cases and to date only one (b)(3) class has been certified in a consumer data breach case. *See Smith v. Triad of Alabama, LLC*, No. 1:14-cv-324-WKW, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017). Further, while Plaintiffs feel they would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not certain. *Id*. Any potential certification would also be subject to later appeal, potential reversal, and a protracted timelines. The cost of trial and any appeals would be significant and would delay the resolution of this Litigation without the guarantee of any relief. *Id*.

Furthermore, the outcome of this Settlement should be considered not only as favorable as other payment card data breach class action settlements, but as more favorable given that multiple other payment card data breach cases have resulted in no recovery for the plaintiff or class members. *See, e.g., Dugas v. Starwood Hotels & Resorts Worldwide, Inc*., 3:16-cv-00014-GPC-BLM (S.D. Cal.), Doc. 56 (order dismissing payment card data breach case) (July 11, 2017); *Whalen v. Michaels Stores, Inc*., 689 F. App'x 89 (2d Cir. 2017) (order affirming dismissal of payment card data breach case).[9]

The Settlement is a common fund settlement that will provide Settlement Class Members with significant and timely benefits which compare favorably to what Settlement Class Members could recover were they to secure a favorable judgment at trial. In the experience of proposed Class Counsel, the monetary relief provided by this Settlement is an outstanding result, and is fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.[10] *See Jackson et al. v. Wendy's International, LLC*, No. 6:16-cv-21-PGB-DCI (M.D. Fla.) (Doc. 157) (approving settlement that provides class members reimbursement of documented losses of up to $5,000); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-CV-02372-KGG, 2018 WL 1879845, at *3 (D. Kan. Feb. 15, 2018) ("The Settlement addresses past harms through reimbursement of Out-of-Pocket Losses or the alternative minimum $200 payment for tax fraud and also helps Settlement Class Members protect against future harm through the Credit Monitoring Services.").

---

[9] The same is true for data breach cases involving solely PII, and no PCD. *See, e.g., Storm v. Paytime, Inc*., 90 F. Supp. 3d 359, 368 (M.D. Pa. 2015) (dismissed for lack of standing as plaintiffs failed to demonstrate that they had suffered actual harm, such as, identity theft); *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 663 (3d Cir. 2016) (negligence claim barred by economic loss doctrine and breach of implied contract dismissed for failure to plead sufficient allegations).

[10] For individuals who experienced actual identity theft, a 2014 Congressional Report stated that these victims incurred an average of $365.00 in expenses in dealing with the fraud. *See* Kristin Finklea, Congressional Research Service, *Identity Theft: Trends and Issues* (January 16, 2014), p. 2, available at https://fas.org/sgp/crs/misc/R40599.pdf (last visited March 11, 2020).

Here, the two $10.00 promotional cards with an attestation of use of a payment card at an affected restaurant during the Data Breach Incident's Relevant Period is a novel benefit requiring minimal effort for those Settlement Class Members who spent material time dealing with the Data Breach Incident but did not have any out-of-pocket expenses. SA ¶ 3.02. Additionally, the reimbursement for documented out-of-pocket losses due to fraud of up to $5,000 with compensation for time spent investigating and remediating fraud of up to $80.00 ($20.00/hour) compares favorably to past data breach settlements. SA ¶ 3.03.

Furthermore, the injunctive relief provided for in this Settlement is significant and ensures the rights of the Settlement Class because it swiftly commits Earl Enterprises to certain security measures and protection of personal information. These remedial measures are attributable to the Settlement and are squarely consistent with the claims on which Plaintiffs have focused in the Litigation. SA ¶ 4.01. These commitments will ensure the adequacy of Defendant's data security practices, and will provide ongoing protection for any consumser's information, as well as providing protection for consumers in the future. Without this Settlement, there is little Settlement Class Members could do individually to achieve similar promises from Earl Enterprises regarding data security going forward. The Settlement is calculated to ensure that Earl Enterprises not only employs the necessary, immediate resources to address existing data security vulnerabilities, but also employs the consistent best practices and accountabilities needed for long-term, proactive data security. This injunctive relief will remain in effect for three years. SA ¶ 4.02.

The Settlement benefits present a substantial recovery, especially considering the litigation risks described above.

<strong>d.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other</strong>

Finally, Amended Rule 23(e) requires that the Settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement based on expenses incurred, not on any unequitable basis, and the remainder of Settlement Class Members who do not have demonstrable out-of-pocket expenses are all eligible for the two $10 promotional cards. SA ¶¶ 3.01–3.04.

### C.    The Proposed Class Notice Satisfies Rule 23

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Litig. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The proposed Notice Program here satisfies all of these criteria and is designed to provide "direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1)(B). The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the case, the proposed Settlement and its terms, any request for attorneys' fees, costs, and expenses, service awards, and the

Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B); Ex. 3.

Notice will be provided to Settlement Class Members through: ((i) a national print publication; (ii) a dedicated Settlement Website established and maintained by the Settlement Administrator which amongst other details will provide relevant dates and deadlines pertaining to the Settlement and make important case documents available for review and download; (iii) Google & Yahoo Network of Sites to target adults 18 years old and over in the United States who visit restaurants and pay with a credit or debit card; (iv) social media targeted ads on Facebook, Instagram, and Youtube; and (v) Spotify audio and banner advertisements. Schwartz Decl. Finally, in accord with CAFA, Defendant will provide timely notice of the Settlement to the Attorneys General of each state in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. SA ¶ 14.13.

Therefore, the Notice Program (including the proposed Notice forms) comply with all applicable law, including, Rule 23 and Due Process.[11] Accordingly, Plaintiffs respectfully request that the Court approve the Notice Program and direct Notice to the Settlement Class.

### D.    Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

---

[11]  The form of the Preliminarily Approval Order (Exhibit 1-A), which was drafted and approved by Plaintiffs' counsel and Defendant's counsel, and the proposed Claim Form (Exhibit 1-D), likewise satisfy all of the criteria of Rule 23.

As discussed above, and as fully explained in John A. Yanchunis' Declaration, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Yanchunis Decl. ¶ 12. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the Settlement of this matter to the benefit of Plaintiffs and the Settlement Class. Yanch. Dec., ¶ 11. Accordingly, Plaintiffs request that the Court appoint John A. Yanchunis and Ryan J. McGee of Morgan & Morgan Complex Litigation Group, Matthew M. Guiney and Carl Malmstrom of Wolf Haldenstein Adler Freeman & Herz, LLP, Rosemary M. Rivas of Levi & Korsinsky, LLP, and Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, as Settlement Class Counsel.

### E.    The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines

In connection with the preliminary approval of the Settlement, Plaintiffs request that the Court set: (1) a date for the Final Approval Hearing no earlier than 150 days from the Preliminary Approval Order; (2) dates for filing papers relating to final approval and attorneys' fees; (3) dates for sending notice to the Settlement Class; and (4) deadlines for any requests for exclusion or objections. Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Creation of Settlement Website | 30 days after entry of the Preliminary Approval Order |
| Notice Date | 30 days after entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 120 days after entry of the Preliminary Approval Order |
| Claims Deadline | 120 days after entry of the Preliminary Approval Order |

| Deadline for Class Counsel's Application for Attorneys' Fees and Service Awards for Settlement Class Representative | 45 days before the Final Approval Hearing |
|---|---|
| Deadline for Motion in Support of Final Approval of Settlement | 45 days before the Final Approval Hearing |
| Final Approval Hearing | No earlier than 150 days after entry of the Preliminary Approval Order |

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order, directing notice of the proposed Settlement to the Settlement Class and setting a hearing for the purpose of deciding whether to grant final approval of the Settlement.

<u>**RULE 3.01(g) CERTIFICATION**</u>

Pursuant to Local Rule 3.01(g), the undersigned has conferred with counsel for the Defendant and is authorized to represent that the Defendant does not oppose this motion.

Dated: September 4, 2020                                    Respectfully submitted,

/s/ *John A. Yanchunis*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis
jyanchunis@ForThePeople.com
Ryan J. McGee
rmcgee@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
Matthew M. Guiney (admitted *pro hac vice*)
guiney@whafh.com
270 Madison Avenue
New York, New York 10016

Telephone: 212/545-4600
Facsimile: 212/545-4653

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
Carl Malmstrom (admitted *pro hac vice*)
malmstrom@whafh.com
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile: 212/545-4653

**WALSH BANKS LAW**
Brian M. Walsh (FBN 10968)
brian.walsh@walshbanks.com
105 E. Robinson Street, #303
Orlando, FL 32801
Tel: (407) 259-2426
Fax: (407) 391-3626

**LEVI & KORSINSKY LLP**
Rosemary M. Rivas (admitted *pro hac vice*)
rrivas@zlk.com
Rosanne L. Mah (admitted *pro hac vice*)
rmah@zlk.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 373-1671
Fax: (415) 484-1294

**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
Gayle M. Blatt (admitted *pro hac vice*)
gmb@cglaw.com
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811
Fax: (619) 544-9232

*Attorneys for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 4, 2020, I electronically filed a true and correct copy of the foregoing unopposed motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

*/s/ John A. Yanchunis*
John A. Yanchunis
